UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **VECTOR TOBACCO LTD.** <br><br> and <br><br> **VECTOR TOBACCO INC.** <br><br>       Plaintiffs, <br><br> v. <br><br> **LIBERTY BRANDS LLC** <br><br> and <br><br> **BARRY GARNER** <br><br> and <br><br> **BETTY MISER** <br><br>       Defendants. | Civil Action No. JFM 03 CV 415 |

## REPLY TO OPPOSITION TO MOTION TO DISMISS

**I.     INTRODUCTION**

Defendants Liberty Brands LLC, Barry Garner and Betty Miser (collectively referred to as the "Defendants"), by counsel, hereby submit this Reply to Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss ("Reply").

The Plaintiffs' Memorandum in Opposition to Defendants' Motion To Dismiss ("Opposition") fails to rectify any of the deficiencies identified in the Defendants' Motion to Dismiss. Therefore, for the reasons set forth in the Motion To Dismiss and this Reply, the Complaint must be dismissed against all the Defendants.

44015.1:531756:02230

II.   **ARGUMENT**

    A.   **Dismissal of All Defendants**

        1.   **Plaintiffs Lack Standing To Sue.**

The Plaintiffs now admit that the Complaint inaccurately describes the corporate transaction from which the KNIGHTS trademark and trade dress rights allegedly were derived. (See Opposition, p. 2). In that regard, they provide a declaration from Marc N. Bell, the Senior Vice President and General Counsel of Vector Tobacco Inc., to allegedly explain how the transaction occurred. (See Bell Decl.).

While the Complaint (¶ 26) describes the corporate transaction as a simple merger by Vector Tobacco Inc. ( Delaware) with the Medallion Company, Inc. ("Medallion"), resulting in a new company Vector Tobacco Inc. (Virginia), the actual transaction was much more complex and sophisticated. The Opposition and Bell Declaration now confess that the transaction involved the purchase of Medallion's stock and assets by a previously unidentified entity VGR Acquisition Inc. ("VGR") (Opposition, p. 2; Bell Decl. ¶ 2); and, that VGR also was involved in the merger with Vector Tobacco Inc. and Medallion. (Opposition, p. 2; Bell Decl. ¶¶ 3 and 4). These are all fairly important facts, when the issue at bar involves the alleged sale and acquisition of intellectual property rights.

The Plaintiffs also admit that the Complaint falsely asserted that Plaintiff Vector Tobacco Ltd. owned the KNIGHTS trademark. (See Opposition, p.3; Bell Decl., Exhibit 4). Apparently, the putative assignment of the KNIGHTS trademark to Vector Tobacco Ltd. did not occur until April 3, 2003, after the Motion to Dismiss was filed. (See Bell Decl., Exhibit 4).[1]

---

[1] The procedural history is as follows: The Complaint was served on February 24, 2003. Paragraph 5 of the Complaint alleged that Vector Tobacco Ltd. was the owner of the KNIGHTS trademark. Defendants Motion to Dismiss was served on March 17, 2003. The alleged assignment of the KNIGHTS trademark to Vector Tobacco Ltd. did not occur until April 3, 2003. (See Bell Decl., Exhibit 4).

Despite these glaring omissions and misstatements, the Plaintiffs cavalierly suggest that the Court should ignore their knowing errors because the Complaint allegedly satisfies the requirements of notice pleading, which "simply does not require reciting the complete chain of title of the mark in issue." (Opposition, p. 2).

This Complaint does not meet the minimal requirements of Fed. R. Civ. P. 8(a), because it affirmatively misrepresented the parties and the facts. This is not a case where the Plaintiffs failed to identify a link in the alleged chain of title to the mark. Here, the Plaintiffs filed their Complaint containing allegations without evidentiary support. See Fed. R. Civ. P. 11(b)(3). The normal cure for this error is dismissal with leave to amend the complaint, rather than the amendment by post hoc assignment and affidavit.

The Plaintiffs knowingly provided a false or inaccurate description of the Medallion sale and merger transaction by eliminating information about one of the key participants VGR. Meanwhile, VGR had purchased the stock and assets of Medallion (see Motion to Dismiss, Exhibits 5 and 6) and was identifying itself to the public as the new owner of Medallion, arguably including the owner of its intellectual property rights. (See Exhibit 7, attached hereto).[2]

Because the Complaint makes no allegation that VGR transferred, assigned, licensed or otherwise conveyed any rights to the KNIGHTS trademark or trade dress to Plaintiffs, they cannot claim ownership to these rights and therefore, lack standing to sue on the trademark claims (Counts I-VI).

Further, the false and inaccurate statements in the Complaint hinder Defendants from preparing an adequate defense to the allegations in the Complaint.

Accordingly, the Complaint should be dismissed.

---

[2] For ease of review, the Defendants have identified its Reply Exhibit by the next successive number to the Exhibits in the Motion to Dismiss.

### 2. The Court Should Not Exercise Supplemental Jurisdiction Over Count VIII.

To the extent that the federal Lanham Act claims and related unfair competition claims are dismissed, the Court has discretion to dismiss supplemental jurisdiction over the remaining state common law claims in Count VIII. Accordingly, the Defendants contend that Count VIII of the Complaint should be dismissed. See 28 U.S.C. §1367(c)(3).

### B. Separate Grounds For Dismissal Of Garner and Miser

#### 1. The Court Does Not Have Personal Jurisdiction Over Garner and Miser.

As fully set forth in the Motion to Dismiss, the Court does not have personal jurisdiction over Defendants Garner and Miser because they have not purposely established "minimum contacts" with the State of Maryland and the assertion of personal jurisdiction does not comport with the principles of fair play and substantial justice.

Both Garner and Miser are Virginia residents, who work in Richmond, Virginia. (Motion to Dismiss, Exhibit 1, ¶¶ 2 and 3; Exhibit 2, ¶¶ 2 and 3). Their employment duties require their presence at Liberty's manufacturing facility in Virginia. (Id. at Exhibit 1, ¶ 6; Exhibit 2, ¶ 7). Garner's job is to oversee the manufacturing machinery onsite. (Id. at Exhibit 1, ¶ 3). Miser's job involves a variety of administrative functions. (Id. at Exhibit 2, ¶ 3). Neither Defendant has transacted business or otherwise committed acts that would subject them to the jurisdiction of a court sitting in Maryland. Neither the Complaint nor the Opposition identify any such contacts.

The Plaintiffs attempt to avoid the fact that Defendants Miser and Garner have absolutely no contacts with Maryland by misstating the law. The Plaintiffs assert that all that is required to establish personal jurisdiction over Defendants is to determine whether the Maryland long-arm statute applies. This is completely inaccurate and turns the application of personal jurisdiction analysis on its head.

Generally, courts use a two step process in determining whether to exercise personal jurisdiction pursuant to a state long-arm statute. First, the court determines whether the statute permits the exercise of jurisdiction under the facts presented. If the answer to that question is yes, then the court considers whether the exercise of jurisdiction satisfies 14th Amendment due process standards. English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990).

However, because the Maryland long-arm statute was designed to extend personal jurisdiction to the limits allowed by federal due process, the two step process merges into one. Ellicott Machine Corp. v. Holland, 995 F.2d 474, 477 (4th Cir. 1993); (citing Mohamed v. Michael, 279 Md. 653, 657, 370 A.2d 551, 557 (1977)). That process is determining whether the party has sufficient contacts with the forum state. See Id.

As discussed in the Motion to Dismiss and this Reply, Defendants Garner and Miser have no contacts with the State of Maryland sufficient to subject them to the jurisdiction of this Court. The Plaintiffs concede this point stating that unspecified acts occurred in Virginia, which enabled the alleged infringement in Maryland. (See Opposition, p.5). Yet, their pleading does not acknowledge the content of the affidavits of Garner and Miser which demonstrate that they had no role in the alleged infringement.

    **2.**    **The Complaint Fails To State a Claim Upon Which Relief May Be Granted for Counts VII and VIII.**

Plaintiffs misperceive this argument by noting that a federal court with jurisdiction may adjudicate a related state claim. (Opposition p. 8). This is undoubtedly true. The issue here is that the Complaint alleges a related state claim under Maryland law, which is clearly inapplicable to the activities of Virginia residents, who work in Virginia for a Virginia Corporation. Any alleged shortcoming of the performance of their fiduciary duties would necessarily be controlled by the law of Virginia and not Maryland, as alleged in the Complaint.

### III. <u>CONCLUSION</u>

For the foregoing reasons and the reasons set forth in the Motion to Dismiss, the Defendants respectfully request that the Complaint be dismissed.

Respectfully submitted,

/ John J. McDermott /
John J. McDermott (Bar No. 924803)
Craig A. Koenigs
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
1120 20th Street, N.W.
Suite 700, North Building
Washington, DC  20036-3406
Telephone (202) 973-1200
Facsimile (202) 973-1212
**ATTORNEYS FOR DEFENDANTS**

MEMORANDUM

TO: Medallion Employees
1101 Athens Avenue
Richmond, Virginia 23227

FROM: VGR Acquisition Inc.

DATE: April 1, 2002

RE: Termination Notification

---

As you may know, on February 15, 2002, The Medallion Company, Inc. ("Medallion") entered into an agreement providing for VGR Acquisition Inc. ("VGR") to purchase Medallion. The acquisition was completed on April 1, 2002. VGR will not be in a position to offer you employment going forward. Therefore, your employment will be terminated on May 31, 2002.

This notice is being provided to you pursuant to the Worker Adjustment and Retraining Notification Act of 1988 ("WARN"), which requires employers to give notice to certain employees of a pending facility shutdown or mass layoff. The following information is being provided to you about the loss of employment:

1. The employment loss will be permanent.

2. No employee will have a greater opportunity for continued employment than any other employee based on seniority.

3. It is currently anticipated that your employment will be terminated on May 31, 2002.

We thank you for your service to the company.

If you have any questions about this memorandum, please contact Eileen Gibson at (804) *553-1944*. Thank you.

**Exhibit 7
(Motion to Dismiss Reply)**