LIMITING DEPOSITION HOURS - ITS METHOD AND RATIONALE

Several years ago many of us on the Federal District Court of Maryland began to include in our scheduling orders a provision limiting the number of deposition hours of fact witnesses. Our obvious purpose has been to reduce the costs of discovery. The members of our bar appear to have accepted the practice, and it seems to be working quite well. Although I have no desire to proselytize, I have concluded that it might be worthwhile to share our approach with a broader audience since our experience has been favorable.

Let me start by simply stating the formula that we use as the base line for initially determining the appropriate number of deposition hours. (Please do not be alarmed; disclaimers will follow). The formula is this: one hour of fact depositions per side for every $10,000 in controversy. Experience predated the formula. I derived the latter from a review of various orders that I had entered limiting deposition hours. After the formula had emerged from the data, I asked myself if there was any rationale for it. I found that there was.

I first made four assumptions: (1) from a public policy perspective the acceptable level of the aggregate transactional costs for dispute resolution is 25% of the amount in controversy;[1] (2) an hourly attorney's fee of $150; (3) one party per side; and (4) one attorney per party. Using those

---

[1] Let me be clear that what I am talking about is the appropriate level of transactional costs as viewed from a policy perspective outside the litigation. Within the litigation it is up to the clients to determine what the worth of their lawyers' work is to them. Given the legitimate economic realities of law practice, contingency fees in an amount greater than 25% for one side alone are warranted in some cases. However, independent public policy interests require that external restraints be placed upon the scope of the litigation process. One side should not be permitted to escalate litigation costs to such an extent that her opponent can no longer continue the fight. Moreover, widespread perception that litigation is so expensive that only the wealthy can afford it erodes public confidence in the legal system and discourages resort to the courts for the resolution of disputes.

assumptions, application of my formula has the following results depending upon the amount in controversy:

| Amount in Controversy | Deposition Hours Per Side | Deposition Hours Total | Dep. Fees | Appropriate Transactional Costs[2] | % of Dep.Fees/ TransCosts |
|---|---|---|---|---|---|
| $   50,000 | 5 | 10 | $ 3,000[3] | $ 12,500 | 24% |
| $  100,000 | 10 | 20 | $ 6,000 | $ 25,000 | 24% |
| $  250,000 | 25 | 50 | $15,000 | $ 62,500 | 24% |
| $  500,000 | 50 | 100 | $30,000 | $125,000 | 24% |
| $1,000,000 | 100 | 200 | $60,000 | $250,000 | 24% |

As this chart indicates, application of the formula results in approximately 25% of what I have assumed to be the proper level of transactional costs being incurred for attorneys' fees in taking depositions. This does not seem unreasonably low, particularly since any experienced trial lawyer knows that every hour in deposition requires an hour's preparation. Furthermore, as I have noted, the formula is applied only to the depositions of fact witnesses. If (as in most cases) experts are involved, additional deposition hours are necessary.[4]

---

[2] 25% x the amount claimed, e.g. 25% x 50,000 = $12,500

[3] 10 (total hours) x $300 (hourly deposition fees for both sides)

[4] Ordinarily, we do not limit the number of hours of expert depositions because under traditional Maryland practice (which is in accord with the dictates of Fed. R. Civ. P. 26(b)(4)(C)) the party taking the deposition of an opponent's expert must pay for the expert's time spent on direct examination during the deposition. The deposing party therefore usually has no incentive to unduly

My assumptions are, of course, subject to debate. The $150 per hour fee that I have posited may be too high or too low in different locales or in different types of cases. The "one party per side" and "one attorney per party" may be simplistic but if anything it is conservative. Most importantly, reasonable people can disagree as to what is an appropriate level of aggregate transactional costs for dispute resolution. Everyone, unless they are Dickensian caricatures, would agree that 100% is too high. Non-lawyers may opt for 10%, but from the standpoint of economic reality 10% is too low. I do not pretend to have any special knowledge. However, a figure somewhere in the range of 20% to 40% would seem to be appropriate, and I would suggest that whatever the precise figure may be, the formula is not too far off. In any event it provides a framework for analysis and at most requires only fine-tuning if a different "appropriate level of transactional costs" assumption is made.

Now is the time for disclaimers. I do not believe in rigid codes. However symmetrical a chart or graph may seem, the life of the law is too fluid to constrain in narrow categories. Reason must prevail over rationality. My colleagues and I realize that lawyers know their cases far better than do we, and we permit lawyers to have input in the decision-making process. Although in most cases we enter our initial scheduling orders before meeting with counsel, the pertinent provision of our form order provides as follows:

> Please confer with one another and report to me within 14 days of the date of this order concerning the number of hours of depositions which you believe is appropriate. If I have not heard from you by that date, each side should be limited to [ ] hours of depositions of fact witnesses (including parties). If you agree to another number of deposition hours and notify me of your agreement, you may consider your agreement approved unless you hear from me to the contrary within ten days.

---

prolong the deposition.

3

If counsel agree that the number of deposition hours should be different from that which we have set and their requested modification is reasonable, we grant the request without further ado. If they are in disagreement or if their request seems to be excessive, we will immediately speak to them about it by conference call. Sometimes it is clear that counsel have not thought through the cost implications of the deposition hours they have requested, and we explain to them the reasons for the limits we have set. However, at other times counsel persuade us that the case is one that varies from the norm. Factors we consider in that regard include the nature of the claim, whether the <u>ad damnum</u> clause in the complaint appears realistic, the number of potential witnesses, the scope of knowledge of potential witnesses, the importance and value of non-monetary aspects of the case, the number of parties per side and conflict among parties on the same side.[5]

In conclusion, let me say that when I first began to limit the number of deposition hours, I was surprised by what seemed to me the relatively low number of hours resulting from my method of analysis. During the intervening years I have discussed my approach both with individual lawyers and with various bar groups and invited them to tell me if there is a flaw in my reasoning. They have not

---

[5] As a general rule, we vary from the figure that the formula yields only when (after conferring with counsel) we are persuaded the case is atypical. However, when we set our initial figure we do not take an <u>ad damnum</u> clause at face value but review the underlying allegations in the complaint to see if the amount claimed appears realistic. Moreover, some of the variations from the norm are themselves recurring, and we take them into account when we calculate our initial figure. For example, witnesses in motor vehicle torts frequently have rather limited factual knowledge. Therefore, if the claim in such a case is $100,000, I will set a limit of 8 hours rather than 10. On the other hand, I recognize that employment disputes usually require greater discovery. Therefore, if the claim in such a case is $100,000, I set a limit of 12 hours instead of 10.

done so.  I recognize that this may be out of respect for (or fear of) my office.  Nevertheless, I am increasingly persuaded that the practice we are following in Maryland is appropriate and, together with limits on interrogatories and other written discovery, is one of the few effective means to contain the cost of litigation.  We should remember that the 1938 amendments to the Federal Rules which ushered in the era of discovery were written by true trial lawyers who were accustomed to getting to the point quickly when examining witnesses since they usually were doing so in the courtroom.  Several generations (including my own) of what I might call "discovery lawyers" have been bred since then.  We were trained from our earliest days at the bar to imitate Captain Ahab, finding the whale (or the minnow) in the sea of discovery that might win our case.  Although our voyage was sometimes fruitful, frequently we returned without a catch.  Economics - and the realization that justice the parties cannot afford is not justice at all - requires us to take a more balanced view and use in moderation the discovery tools our predecessors wisely handed to us.


    J. Frederick Motz
    10/21/96